CHRISTOPHER FUNKE *vs.* MINNESOTA FARMERS' MUTUAL FIRE INSURANCE ASSOCIATION.

August 3, 1882.

**Fire Insurance—Policy Avoided by Subsequent Invalid Insurance.**
A policy of fire insurance contained a condition that the insured should not be entitled to recover if he should thereafter make any insurance in any other company on the property insured without obtaining the consent of the secretary. The insured did thereafter enter into a contract of insurance upon the same property with another company, which, however, by reason of misrepresentations on his part, and by reason of such prior insurance, was by its terms "void." *Held*, that the condition recited was broken, and the insured could not recover.

Action on a fire-insurance policy issued by defendant to plaintiff June 19, 1874, and containing, among other conditions, the following: "If the insured shall have or shall hereafter make any insurance in any other company on the property hereby insured, or any part thereof, without obtaining the consent of the secretory of this association, * * * then, in every such case, the insured shall not be entitled to recover from the association any loss or damage which may occur in or to the property hereby insured, or any part or portion thereof." In the application for insurance as well as in the policy, the plaintiff agreed "to abide by the charter and by-laws of this association, now or hereafter in force." The policy also provided "that this policy is made and accepted subject to the charter, by-laws, rules, regulations and conditions now or hereafter in force, which are to be used to explain or ascertain the right and obligation of the parties hereto, not herein otherwise provided for." Among the by-laws of the company, printed upon the policy, was the following: "Sec. 9. Any member wishing to insure the same property in another association must notify the secretary and obtain consent." After the delivery of the policy and before the loss (which happened March 19, 1880,) the by-law above quoted was amended so as to read as follows: "Sec. 9. Notice in writing of any existing insurance upon any of said property is required; and, if not given at the time of insuring in this

association, or if any subsequent insurance be procured on any of the property, whether such additional insurance be valid or otherwise, without the written consent of the secretary, in either such case the policy shall be null and void." It was admitted by defendant that "the plaintiff was not present at the time of the adoption of the amendment to defendant's by-laws, and had no actual notice thereof until after the commencement of this action, and no notice whatever except such as might be implied from his membership in the company."

About the 11th of February, 1879, the plaintiff made a written application to the American Insurance Company, of Chicago, Illinois, for insurance on property including that covered by the defendant's policy. The application contained the following question and answer: "Is there any other insurance on the property? No." A few days afterwards the American Ins. Co. issued to plaintiff a policy running five years from February 7, 1879. This policy contained the following provisions: "The application and description above referred to shall be deemed and be a part of this contract, and a warranty on the part of the assured; and the assured hereby covenants and agrees that the statements in said application and description are in all respects true, and that this policy is issued by this company solely upon the basis of the truthfulness of said application and description; and it is further agreed that any omission to make known to the company any fact material to the risk or any overvaluation, shall render this policy void.

"It is further provided and agreed that if the assured shall have or shall hereafter obtain any other insurance on the property hereby insured, or any part thereof, without the consent of the secretary of this company written hereon, * * * then in every such case this policy shall be void.

"This policy is made and accepted upon the above express conditions, and the charter of the company * * * which is hereby made a part of this policy."

The charter of the American Insurance Company, granted by the legislature of the state of Illinois, provides: "If insurance on any house or building, household furniture, merchandise, or other prop-

erty, shall be and subsist in said company, and in any other office, or from and by any other person or persons at the same time, the insurance made in and by this company shall be deemed and become void, unless such double insurance subsist by and with the consent of the directors, signified by the endorsement on the back of the policy, signed by the president and secretary."

At the time of his application to the American company, the plaintiff notified the agent of that company to whom the application was made, that he held the policy in suit in the defendant company. The agent advised him to send the policy back to defendant within a few days, and have it cancelled; and he would thereupon promise him a policy in the American company. The plaintiff promised to do so, and gave the policy in suit to one Joseph Funke, to be returned to the defendant. Joseph Funke, however, kept the policy in his possession and never returned it to defendant, nor was defendant notified of the plaintiff's application to the American company, or of his insurance with that company, until after the loss. No further notice of plaintiff's insurance with the defendant was given to the American company, nor was any indorsement of consent to such insurance indorsed on the the policy issued by the American company, which policy was delivered to plaintiff a few days after his application and conversation with the agent and without any inquiry on the agent's part as to the plaintiff's insurance with the defendant.

After the fire, the plaintiff endeavored to collect from the American company, which refused to pay, on being informed by plaintiff, after the loss had been adjusted, of the fact (then first discovered by plaintiff) that the policy in suit had never been cancelled.

Plaintiff having brought this action in the district court for Freeborn county, the place of trial was changed to Hennepin county, where the action was tried by *Vanderburgh*, J., without a jury, and judgment was ordered for the plaintiff. A new trial was refused, and the defendant appealed.

*Levi & Cray,* for appellant.

*J. M. Bailey* and *J. W. Steel,* for respondent.

Under the condition of the policy in suit, the plaintiff's right of recovery could be barred only by a subsequent valid insurance. We

know of no text-writer of any respectability who has ventured to lay down the contrary doctrine, and the very few decisions in which it has been announced have been repeatedly disapproved or expressly overruled. May on Insurance, § 365; Flanders on Fire Insurance, 49, 50; Wood on Fire Insurance, § 348; *N. E. Fire & M. Ins. Co.* v. *Schettler*, 38 Ill. 166; *Rising Sun Ins. Co.* v. *Slaughter*, 20 Ind. 520; *Hubbard* v. *Hartford Ins. Co.*, 33 Iowa, 325; *Philbrook* v. *New England Mut. Fire Ins. Co.*, 37 Me. 137; *Lindley* v. *Union Ins. Co.*, 65 Me. 368; *Jackson* v. *Mass. Mut. Fire Ins. Co.*, 23 Pick. 418; *Clark* v. *New England Mut. Ins. Co.*, 6 Cush. 342; *Hardy* v. *Union Mut. Fire Ins. Co.*, 4 Allen, 217; *Thomas* v. *Builders Ins. Co.*, 119 Mass. 121; *Dahlberg* v. *St. Louis Mut. Ins. Co.*, 6 Mo. App. 121; *Gale* v. *Belknap Co. Ins. Co.*, 41 N. H. 170; *Schenck* v. *Mercer Co. Mut. Fire Ins. Co.*, 24 N. J. Law, 447; *Firemen's Ins. Co.* v. *Holt*, 35 Ohio St. 189; *Stacey* v. *Franklin Fire Ins. Co.*, 2 Watts & Serg. 506; *Sutherland* v. *Old Dominion Ins. Co.*, 31 Gratt. 176; *Allison* v. *Phœnix Ins. Co.*, 3 Dill. 480; *Knight* v. *Eureka Fire & Mar. Ins. Co.*, 26 Ohio St. 664.

The second policy being inoperative at the time of loss is no bar to a recovery upon the policy in suit. *N. E. Fire & M. Ins. Co.* v. *Schettler*, 38 Ill. 166; *Schmidt* v. *Peoria Mar. & Fire Ins. Co.*, 41 Ill. 295; *Ins. Co. of North America* v. *McDowell*, 50 Ill. 120; *Hubbard* v. *Hartford Fire Ins. Co.*, 33 Iowa, 325; *Power* v. *Ocean Ins. Co.*, 19 La. 28; *Obermeyer* v. *Globe Mut. Ins. Co.*, 43 Mo. 573; *Mitchell* v. *Lycoming Mut. Ins. Co.*, 51 Pa. St. 402; *Sutherland* v. *Old Dominion Ins. Co.*, 31 Gratt. 176.

DICKINSON, J.[*]   This action is to recover upon a policy of insurance issued by the defendant in June, 1874, whereby the defendant insured the dwelling-house and furniture of the plaintiff against loss by fire for a period of seven years. The fire causing the injury complained of occurred in March, 1880. The policy contained these conditions: "If the insured shall have, or shall hereafter make, any insurance in any other company on the property hereby insured, or any part thereof, without obtaining the consent of the secretary of

[*]Mitchell and Vanderburgh, JJ., took no part in the decision of this case, the former because of illness, and the latter having tried the case in the court below.

this association, * * * the insured shall not be entitled to recover from the association any loss or damage which may occur in or to the property hereby insured, or any part or portion thereof." In February, 1879, while this policy was still in force, the plaintiff made application to the American Insurance Company, of Illinois, for insurance upon the same property, representing in such application that he had no other insurance upon it. Thereupon, and upon a sufficient consideration, the latter company issued its policy of insurance upon said property for the period of five years, which policy was, however, by its terms rendered "void" by reason of the prior and undisclosed contract of insurance with this defendant, although upon its face it was a valid contract of insurance. The plaintiff held the policy of the American Insurance Company, and after the loss in March, 1880, made proofs of loss, and claimed payment from that company. The company, however, learning of the prior insurance with this defendant, refused to pay, denying its obligation. No notice was given to the defendant of the subsequent insurance in the American Insurance Company. The court below considered that the plaintiff had not been guilty of actual fraud in the premises, and, upon the facts here briefly stated, plaintiff was held entitled to recover.

The liability of the defendant depends upon the proper legal construction of the written contract of insurance. In the policy is expressed the agreement of the parties, in terms which must be regarded as having been deliberately chosen by themselves, and which we must presume they both understood and consented to. If the condition respecting other insurance was violated, not in its letter, but within the intent and meaning of the parties, by the making of a subsquent contract of insurance, valid upon its face, but void or voidable in fact by reason of misrepresentation (not actually fraudulent) on the part of the assured, then the liability of the defendant was terminated. Otherwise it was not. We have, then, to consider the meaning and force of that stipulation in the contract.

The courts have often been called upon to construe similar provisions in policies of insurance, and, in the American courts, it has generally been held that policies containing conditions similar to

that in this case were not avoided by the making of other contracts of insurance which were in fact void or voidable by reason of the breach of some condition therein, or by reason of misrepresentation. These decisions proceed upon a construction of the contract which makes the condition against other insurance to mean only other *valid* insurance, or a *valid* and *enforceable* contract of insurance; and hence it is held that other contracts of insurance, void or voidable at the election of the insurer, by reason of the breach of some condition therein, or even, as some of the courts hold, by reason of the actual fraud of the insured, are not within the condition construed, and do not operate to avoid the policy. We cannot yield assent to such a construction of the contract. It involves, in our judgment, a disregard of the plain objects contemplated by the parties to the contract when it was made, and to accomplish which the condition against other insurance was adopted. It is a matter of common knowledge, which we may not ignore in construing this contract, that it is a settled policy of insurers against loss by fire to protect themselves against incendiarism and negligence, by compelling the insured to bear some part of the risk, so that, if the property shall be destroyed, he will suffer loss, notwithstanding his insurance. To this end the insurer limits the amount of his own insurance upon the property to a sum less than its value, and guards against other insurance being effected upon the same property, without his consent, by stipulations to that effect, which are ordinarily, as in this case, embodied in the written contract of insurance. Such provisions are for the benefit of the insurer, and can have no other object or purpose than to place the insured in such a position respecting the property that, from considerations of self-interest, he not only will not wilfully burn it, but will be watchful and careful in guarding against fire.

In the case before us it distinctly appears that what we have spoken of as a custom in the business of insurance was not departed from. The policy provided that the insured shall not be entitled to recover more than two-thirds of the value of the property at the time when loss should occur, and that any misrepresentation or overvaluation in the application should avoid the policy; and, in the same connection, is the condition respecting other insurance, already

quoted.   It has never been claimed, to our knowledge, that the object of incorporating in contracts of insurance conditions like that under consideration was or could possibly have been other than that which is above indicated.   Considering now the purpose sought to be accomplished by this condition, and which, if we have interpreted it aright, both the parties must be regarded as having understood as we understand it, the conclusion is unavoidable that in making a subsequent contract of insurance, for the purpose of securing other or further indemnity in case of loss by fire, the plaintiff did that which, by the terms of the contract, avoided it, although he could not enforce a recovery upon such subsequent contract.   We assume that the plaintiff intended to secure indemnity by the second insurance. It is not consistent with human conduct that he should have paid a premium and incurred legal obligations knowing that he secured no right and no possibility of benefit in return.   So far as concerned his conduct in the care or destruction of the property, it was not important in a legal sense whether in fact the second contract was enforceable by him or not.   By the very means contemplated by the parties and referred to in the contract—that is, by contracting for other indemnity in case of loss by fire—he had removed from his mind all motives of self-interest in the preservation of the property, so far as "other insurance" could have that effect.   Whatever increased hazard "other insurance" could cause, was effected, to the full extent, if, in fact, plaintiff supposed the second insurance valid and enforceable; and in a less degree, perhaps, if he knew it to be void at the election of the insurer, and that he could not recover upon it if the facts avoiding it should be discovered.   In either event that purpose which the parties to this contract contemplated, and deemed so important that they made express conditions respecting it, was defeated.

In the decisions which we have above referred to, it has been considered that a non-enforceable contract for "other insurance" is not a breach of the condition, because, in fact, it is not *insurance*.   The supreme court of New Hampshire expresses the idea in these words : "There is an intrinsic absurdity in holding that to be an insurance by which a party is bound to make good another's loss only in case he pleases to do it."   *Gale* v. *Belknap County Ins. Co.*, 41 N. H. 170.

Such a construction of the contract is not at all necessary from a consideration of the proper and natural import of the word insurance; and we are unable to comprehend how it can be regarded as expressing the agreement in the minds of the parties, without disregarding what every one must understand to have been the purpose contemplated.   Contracts are not to be so construed.   The same construction would make a second insurance inoperative to terminate the liability of a prior insurer under conditions like that in this policy, if it should appear, after the loss had occurred, that the second insurer had been from the time of making the contract insolvent.   The word insurance, in common speech and with propriety, is used quite as often in the sense of *contract* of *insurance*, or *act* of *insuring*, as in that expressing the abstract idea of *indemnity* or *security against loss*.   In that sense the word was used 'in this contract.

We are sustained in the interpretation of this contract, and in our conclusion, by the following authorities:     *Carpenter* v. *Providence Washington Ins. Co.*, 16 Pet. 495 ; *Bigler* v. *N. Y. Cent. Ins. Co.*, 22 N. Y. 402 ; *Lackey* v. *Georgia Home Ins. Co.*, 42 Ga. 456 ; *Allen* v. *Merchants' Mut. Ins. Co.*, 30 La. Ann. 1386 ; *Jacobs* v. *Equitable Ins. Co.*, 19 U. C. Q. B. 250 ; *Ramsey Cloth Co.* v. *Mut. Fire Ins. Co.*, 11 U. C. Q. B. 516 ; *Mason* v. *Andes Ins. Co.*, 23 U. C. C. P. 37.   See also *Plath* v. *Minn. Farmers' Mut. Fire Ins. Ass'n*, 23 Minn. 479, in which, under a stipulation that if the insured should mortgage "*the property*" insured it should avoid the policy, a mortgage of a *part* only of the property was held to have that effect.   In that case the act of the insured did not violate the letter of the contract, but in that case, as in this, it did violate its spirit, and tend to defeat the well-understood objects contemplated.

In some courts, in cases like this, a distinction is made resting upon the action or election of the subsequent or "other" insurer. If such insurer avails himself of his legal right, and elects to treat his contract as invalid, it is held not to avoid the first contract; but if he waives the forfeiture, even after the loss by fire has occurred, and treats his contract as valid, then such "other insurance" is deemed to have been a violation of the condition.   See *David* v. *Hartford Ins. Co.*, 13 Iowa, 69; *Hubbard* v. *Hartford Fire Ins. Co.*, 33

Iowa, 325. Such a distinction cannot, in our opinion, be sustained. It makes the validity of the contract between two parties to depend, not upon their own agreement, nor upon their own acts, but upon what another person, a stranger to the contract, may do, even after the liability upon the contract had become absolute by the destruction of the property, if, in fact, there was any obligation. This cannot be. The making of the second contract of insurance violated the terms of the former contract, if at all, at the time such second contract was made. The subsequent affirmance or disaffirmance of that contract by the insurer, as he might elect, could not affect the validity of the former contract between other parties. Most of the authorities so hold. See *Dahlberg* v. *St. Louis Mut. Ins. Co.,* 6 Mo. App. 121, and cases cited.

Order reversed.